Edward J. Greenfield, J.
In this case, submitted on an agreed statement of facts, the court is asked to construe a document denominated as a “ Premium Finance Agreement ’ ’. Such an agreement is authorized and regulated by Article XII-B of the Banking Law, to enable an insured to finance his obligation for premiums with a State-supervised agency.
Plaintiff is a “ premium finance agency ’ ’, that is, as defined in the definitions section of article XII-B of the Banking Law (§ 554, subd. 7), it is engaged in the business of entering into or acquiring premium finance agreements from insureds, agents, or brokers. Defendant is an insurance broker, who is being sued as the “endorser” of seven “notes” (i.e., premium finance agreements) made by seven of his clients who have failed to pay the full amounts due thereunder. The question in this case is whether the broker, who is the designated payee by the insureds, becomes personally liable as an unqualified endorser of a negotiable instrument when he assigns that instrument to the premium finance agency.
The host of reasons put forth by the defendant to bolster his argument that the instruments in suit are not negotiable are neither persuasive nor material. The promise of the insured to pay a sum certain is not rendered conditional by the grant of authority to the payee or assignee to cancel the insurance policy in the event of default, and apply the return premiums against the unpaid balance. (Uniform Commercial Code, § 3-112, subd. [1], par. [b]; Negotiable Instruments Law, § 24, subd. 1.) Nor does the fact that the broker assigns the instrument to plaintiff “ subject to their acceptance ” render it conditional, for that is not a condition of payment, but merely a condition precedent before the instrument comes into being— a credit approval — which gives rise to the instrument. (Uniform Commercial Code, § 3-105, subd. [1], par. [b]; Negotiable Instruments Law, § 22, subd. 2.) The fact that, the balance due is payable in a stated number of monthly installments, commencing on a specified date, does not render the date of payment indefinite. Any reasonable construction would indicate the subsequent monthly installments would be due one month apart starting on the date named. (Old Colony Trust Co. v. Stumpel, 126 Misc. 375.)
Since the form of the instrument is specified by sections 567, 569, and 576 of the Banking Law, the fact that it is headed “Premium Finance Agreement ” as prescribed by the law is of no moment in determining whether it is a negotiable note *689 or some other form of agreement. The defendant assigned to plaintiff all his right, title and interest ‘ ‘ in this note ’ ’, and 'subdivision 8 of section 554 defines a ‘ ‘ premium finance agreement”, as “a promissory note or other written agreement ”. (See, also, § 576, subd. 3, pars, [b] and [c].)
Whether a “ note ” or “ other written agreement ”, whether negotiable or not, does not determine the question of the assigning broker’s liability on the instrument. The instrument in question is not a simple form of note. It consists of four parts — (1) the information as to the policy, premium, service charges and time balance; (2) a promise to pay the time balance in monthly installments; (3) the terms and conditions governing loan and collateral; and (4) the assignment by broker to premium finance agency. Plaintiff urges that without regard to the other portions of the instrument the wording contained in the three lines in the center ‘ ‘ For value received, the undersignd insured promises to pay to the order of [Broker or Agent] at the standard premium plan corporation, 250 West 57th Street, New York 19, N. Y., hereinafter known as Assignee (to which this note is to be transferred subject to its acceptance), $-in the installments as stated above ” renders it a promissory note, and that any person placing his signature thereon “ otherwise than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.” (Negotiable Instruments Law, § 36, subd. 6; § 113; Uniform Commercial Code, § 3-402.)
Indeed, in the leading case of Fay v. Witte (262 N. Y. 215, 216) it was held that an endorsement in the form “I hereby assign all my right and interest in this note to Richard Fay in full [signed] Harry C. Witte ” was an unqualified endorsement, absent words expressing a' different intent. Here the defendant placed his signature under the following words: ‘ ‘ For value received, the undersigned assigns to the standard premium plan corporation, subject to their acceptance of such assignment, all right, title and interest in this note, all sums payable thereunder, and the collateral security referred to therein and warrants the validity of said note and the truth of the facts contained therein, and that the insured has received a completed copy of this note.” The signature appears on a blank line over the printed words “Broker’s Signature”. Thus there are both similarities and differences on the endorsement here when compared with that in the Fay v. Witte case, {supra). Whether or not the words of assignment here explicitly negate defendant’s obligation- as endorser with suffi *690 cient certainty to satisfy the requirement of the Uniform Commercial Code and the Fay case is not the crux of the issue.
The controlling body of statutory law here is not article 3 of the Uniform Commercial Code dealing with commercial paper generally, but article XII-B of the Banking Law dealing specifically with premium financing agreements. The section therein dealing with the right of the premium finance agency as against an insurance agent or broker is subdivision 2 of section 566 of the Banking Law which provides:
“ 2. Notwithstanding any contrary provisions of the personal property law, banking law, or other law:
“(a) * * * a premium finance agency may purchase or otherwise acquire a premium finance agreement, provided it conforms to this article in all respects, from an insurance agent or broker or another premium finance agency with, recourse against the agent, broker or agency on such terms and, conditions as may he mutually agreed upon”. (Italics supplied.)
I am in agreement with the conclusion of Judge Myers of this court in denying a motion for summary judgment on an identical instrument in Standard Premium Plan Corp. v. Wolf (56 Misc 2d 522) that the Banking Law governs, and that pursuant to the section just quoted, when the broker assigns the premium finance agreement, he does not become an endorser by implication. Unlike the ordinary note where the simple placing of a signature on it by someone other than the maker automatically renders him liable as an endorser unless there is a clear indication otherwise, the law dealing with the premium finance agreement provides that it may be acquired from an insurance broker with recourse (note that recourse does not automatically follow), and recourse is only ‘ ‘ on such terms and conditions as may be mutually agreed upon”. In other words, the broker is liable only if the parties agree in so many words that he is liable, and liability is not to be implied.
What did the parties agree on here? The language of the assignment, which was drawn up by plaintiff on its own forms, transfers all the broker’s right, title and interest to the instrument, in which he is designated as the original payee, and plaintiff as the assignee. The broker warrants the validity of the note, not its collectibility. He warrants the truth of the facts set forth in the agreement — that is, the insurance policy issued, the coverage, effective dates, premium and charges. He does not guarantee that the insured will carry out all the promissory conditions of the agreement. Wholly absent are any words of mutual agreement providing that the premium finance agency *691 is to have recourse against the broker, nor are any terms or conditions either of the broker’s repurchase of the paper or of his liability spelled out. Thus, the broker cannot be held liable as an endorser with recourse, either by implication or by express agreement.
In reaching this result, I am not unmindful that several of my colleagues have come to a directly contrary conclusion, holding the premium finance agreement to be a promissory note governed by the rules of the Uniform Commercial Code, under which the assigning insurance broker becomes an endorser to whom recourse may be had. Holding that the broker is not to be liable unless the terms of recourse are spelled out is, however, more in consonance with the realities of the situation.
The broker does not occupy a position comparable to an endorser on a note. He does not receive full value when he assigns the instrument. His only interest is in the commission or insurance charge, a small fraction of the total for which he is sought to be held liable. While the insured’s agent for the purpose of placing a risk with an insurance company, he stands in the position of an intermediary in arranging for financing. Plaintiff supplies the broker with its own printed forms, and it is clearly understood from the outset that the instrument is to be assigned to the Standard Premium Plan Corporation. The broker is a mere conduit. The broker does not pass upon the credit standing of the applicant — the premium finance agency does when it decides whether or not to accept the assignment — and there is no provision for repurchase of the obligation or other recourse against the broker. If the broker, by virtue of the pro forma assignment, becomes fully liable in the event of the insured’s default, then truly he has been lured into a trap. Under such circumstances, few brokers would willingly participate in such premium finance arrangements.
Under the agreement presented here, I find there is no legal or equitable basis to justify imposing an endorser’s liability upon the forwarding broker. There must, therefore, be judgment for the defendant.