**P P INC., formerly known as Green Mountain Inn, Inc., Plaintiff,**

v.

**Thomas J. McGUIRE and Sandra A. McGuire, jointly, severally, and in the alternative, Defendants,**

v.

**Pascal L. TURSI and Rebecca W. Tursi, jointly, severally, and in the alternative, Third-Party Defendants.**

Civ. A. No. 80–1737.

United States District Court, D. New Jersey.

March 13, 1981.

William F. Keating, Capehart & Scatchard, Moorestown, N. J., for plaintiff.

Albert R. Rago, Melletz, Rago & Newman, Cherry Hill, N. J., for defendants.

## OPINION

DEBEVOISE, District Judge.

This is a suit upon a $65,000 promissory note. Jurisdiction is founded upon diversity of citizenship. Plaintiff, PP Inc., contends that it is a holder in due course and seeks to recover against the purported makers of the note, Thomas J. and Sandra A. McGuire. Defendants, the McGuires, claim that plaintiff is not a holder in due course and holds the note subject to their claims and defenses. In addition, they have initiated a third-party complaint against the payees of the note, Pascal L. and Rebecca W. Tursi, for indemnity should judgment be entered against them.

Plaintiff now moves for leave to amend its complaint to add a party plaintiff and for summary judgment. No affidavits have been submitted in connection with the motion, however, and the sole factual record consists of the note itself, a set of admissions by defendants, and two depositions with accompanying exhibits. The facts revealed by these sources are substantially undisputed and will be relied upon in deciding the motions now before the Court. In light of the undeveloped state of the record, however, they will not constitute fact findings for purposes of later motions or a trial on the merits.

## I. *Background*

In the summer of 1979, Sandra McGuire, a resident of Moorestown, New Jersey, entered into negotiations with Pascal and Rebecca Tursi to purchase the inventory, equipment, accounts receivable and name of "Becca's Boutique", a Moorestown clothing store owned as a sole proprietorship by the Tursis. Mrs. McGuire, a real estate agent, had previously been commissioned by the Tursis to sell the store but had been unable to locate a buyer.

On August 17, 1979, with help from colleagues in her real estate office, but without the advice of an attorney, Mrs. McGuire drew up a purchase and sale agreement for "Becca's Boutique", utilizing a standard real estate purchase and sale form. Under the agreement, she and her husband promised to purchase the clothing store for $75,-000, with a down payment of $10,000 and the balance of $65,000 to be paid at closing on October 5, 1979. To the settlement clause, Mrs. McGuire added the following language:

> It is also agreed that this sale is contingent upon the buyer obtaining a Small Business Admin. loan in the amount of $65,000.00 the commitment for which shall be received on or before 10–5–79, or this agreement shall become null and void and all monies returned to the buyer, unless the time for the receipt of said commitment is extended by the seller.

The agreement was apparently signed by Mrs. McGuire and the Tursis in early September, 1979, although the signatures are not dated. Mrs. McGuire alleges that she forged her husband's signature to the document without his prior knowledge or consent.

At approximately the same time, Mrs. McGuire signed a promissory note which, she alleges, was drawn up by Mr. Tursi. This is the note sued upon in the present case. The note provided, in its entirety, as follows:

> FOR VALUE RECEIVED, *THOMAS J. MC GUIRE* AND *SANDRA A. MC GUIRE* HUSBAND AND WIFE, DO PROMISE TO PAY TO THE ORDER OF *PASCAL L. TURSI* AND *REBECCA L. TURSI* of 110 CURTIS LANE, MOORESTOWN, N.J. AND OF THE GREEN MOUNTAIN INN, STOWE, VT. THE SUM OF SIXTY–FIVE THOUSAND DOLLARS ($65,000.00) together with a reasonable sum for attorney's fees if this note is placed in the hands of an attorney for collection. The entire balance of principal, with interest shall become due and payable at the option of the holder, if any installment of principal or interest is not paid according to the following conditions:
>
> > Interest payments of $541.66 shall be due and payable at a rate of 10% per annum, on the 5th day of October, November, and December, 1979.

The note bears the signatures of Thomas J. McGuire and Sandra A. McGuire. Mrs. McGuire alleges that she signed the note at the Tursis' home in their presence and that she forged her husband's signature to this document as well as to the purchase and sale agreement.

In addition to signing the $65,000 promissory note, Mrs. McGuire gave the Tursis the $10,000 cash down payment called for in the purchase and sale agreement. She has no explanation why she signed the promissory note prior to the closing other than that Mr. Tursi asked her to and that she "guessed [she] should sign it, because if the S.B.A. loan didn't go through, the note would not be any good anyway".

Immediately after the promissory note had been signed, the Tursis departed for Stowe, Vermont, where, since the previous spring, they had been negotiating with Parker Perry for the purchase of the Green Mountain Inn. A closing on the Inn was scheduled for September 7, 1979. According to Perry, the terms of the transaction were to be $700,000 in cash for the entire hotel and all of its contents. Two days before the closing, however, Perry learned that the Tursis, despite their acquisition of a Small Business Administration Loan for $500,000, would not be able to produce more than $635,000 in cash. With the advice of his attorney, therefore, Perry agreed to ac-

cept a promissory note from the Tursis to cover the remaining "small balance" of $65,000.

At the closing on September 7, 1979, the Tursis signed and delivered to Parker Perry a promissory note in the amount of $65,000, interest at 10% per annum, payable to the order of Green Mountain Inn, Inc., a corporation of which Parker Perry was President and principal shareholder. The typed instrument was dated September 7, 1979 and signed by both Mr. and Mrs. Tursi. It also contained the following language:

> This note is given for an actual loan of the above amount and is secured by an assignment of a note dated September 4, 1979 from Thomas J. McGuire and Sandra A. McGuire to the makers hereof in the principal amount of $65,000 and a mortgage on the former homestead premises of the makers located at 110 Center Lane, Moorestown, New Jersey.

In accordance with the security clause, the Tursis indorsed the McGuire promissory note with the following language: "Pay to the order of Green Mountain Inn, Inc., with recourse." Both Mr. and Mrs. Tursi's signatures appear beneath the indorsement, as well as the date, September 7, 1979. Parker Perry states that he recalls receiving the Tursis' promissory note at the closing but has no recollection of also receiving the McGuires' note as security. His attorney, he claims, handled all the financial arrangements in connection with the sale of the Green Mountain Inn. Perry also claims that he had never met the McGuires prior to receiving their note but was aware before the closing that the Tursis were attempting to sell two clothing stores which they owned in New Jersey. Perry was unable to say, in his September 25th, 1980 deposition, whether his attorney or the real estate agent who handled the sale of the Inn was acquainted with the McGuires prior to the September 7th, 1979 closing.

In the meantime, in New Jersey, Sandra McGuire took possession of and began to operate "Becca's Boutique". She claims that she had the Tursis' permission to run the store in their absence despite the fact that the McGuires and Tursis had yet to close on its purchase. After she had been in the store for about two weeks, Mrs. McGuire learned that her Small Business Administration loan had been disapproved, allegedly because the Administration. had investigated the business and discovered that it was subject to $40,000 of outstanding debt. She then packed up the Tursis' merchandise and equipment, stored it in the basement, credited the Tursis for the portion of the merchandise which she had already sold, and notified the Tursis that they should come remove the remaining items in the store. She also spoke with the owner of the building, learned that the Tursis were in arrears in their rent, and negotiated a new lease naming her as the tenant. Finally, she ordered new merchandise and re-opened the shop a week later under the name, "McGuire Girl". At no time, Mrs. McGuire alleges, did she ever close with the Tursis on their purchase and sale agreement, nor has she been returned the $10,000 which she delivered as a down payment in September, 1979.

When their promissory note to the Green Mountain Inn, Inc. came due on December 5, 1979, the Tursis defaulted. Although the record contains no evidence of demand on the note, plaintiff contends, in its reply brief, that payment was demanded on January 21, 1980 and refused on February 14, 1980. On June 11, 1980, plaintiff instituted this action against Thomas J. McGuire and Sandra A. McGuire to recover on the note which it held as security for the Tursis' promissory note. The McGuires filed an answer denying liability and instituting a third-party claim against Pascal L. and Rebecca W. Tursi for indemnity should judgment be entered against them.

## II. *Motion to Add a Party-Plaintiff*

The named plaintiff in this action is PP Inc., a corporation organized under the laws of Vermont with its principal place of business in Vermont. PP Inc. operated under the name Green Mountain Inn, Inc. until September 10, 1979, when it filed a name change with the Vermont Secretary of State.

PP Inc. brought suit against the McGuires as indorsee and holder of their promissory note. On June 30, 1980, however, after the action had been filed, the note was further indorsed to the order of Parker Perry, President and principal shareholder of PP Inc., by Dorothy Perry, acting in her capacity as "Vice-President and Duly Authorized Agent" of the corporation. Because the note is now held by Parker Perry, plaintiff seeks, pursuant to Rule 15 of the *Federal Rules of Civil Procedure*, to add him as an additional party plaintiff.

■ Rule 17 of the *Federal Rules of Civil Procedure* provides that "every action shall be prosecuted in the name of the real party in interest". When an interest is transferred after suit has been initiated, however, Rule 25 governs. 7A Wright & Miller, *Federal Practice and Procedure* § 1958 (1972). Rule 25 states that:

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party . . .

It is clear under the case law that when an interest has been transferred, the action may properly continue under the name of the transferor without any effect upon the outcome. *E. g., Froning's, Inc. v. Johnston Feed Service*, 568 F.2d 108 (8th Cir. 1978). When a motion is duly made, however, a court may, in its discretion, enter an order substituting or adding a new party. *International Rediscount Corp. v. Hartford Accident and Indemnity Co.*, 425 F.Supp. 669 (D.Del.1977).

■ Plaintiff has moved to amend its complaint to add Parker Perry as a plaintiff in this action. In light of the fact, however, that negotiation of the note extinguishes PP Inc.'s interest in the action, at least in its original capacity as a plaintiff, the sounder course would be to substitute Parker Perry for the named plaintiff rather than name him as an additional plaintiff. *See Hyatt Chalet Motels, Inc. v. Salem*

*Building & Construction Trades Council*, 298 F.Supp. 699 (D.Or.1968). An order will be entered accordingly.

### III. *Motion for Summary Judgment*

Plaintiff Parker Perry, the current holder of the McGuires' promissory note, moves for summary judgment pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. Because the note is a negotiable instrument, he contends, and because it was taken for value, in good faith, and without notice of a claim or defense, he is entitled to judgment as a matter of law under Article 3 of the Uniform Commercial Code, N.J.S.A. 12A:3–101, *et seq.* All parties agree that the applicable law in this diversity action is the law of New Jersey.

In order to prevail on a motion for summary judgment, the moving party must make an affirmative showing, based upon the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and uncontested exhibits that "there is no genuine issue of material fact and that [he] is entitled to judgment as a matter of law". Rule 56, *Federal Rules of Civil Procedure*. The opposing party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial". *DeLong Corp. v. Raymond International, Inc.*, 622 F.2d 1135 (3d Cir. 1980). All reasonable inferences must be drawn in favor of the party opposing the motion. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Small v. Seldow's Stationery*, 617 F.2d 992, 994 (3d Cir. 1980).

If the McGuires' promissory note were a negotiable instrument and plaintiff were a holder in due course or a transferee from a holder in due course, *see* U.C.C. § 3–201, he would be entitled to recover on the instrument free of the claims and defenses asserted by defendants. Section 3–305 of the Uniform Commercial Code provides that:

To the extent that a holder is a holder in due course he takes the instrument free from

(1) all claims to it on the part of any person; and

(2) all defenses of any party to the instrument with whom the holder has not dealt except

(a) infancy, to the extent that it is a defense to a simple contract; and

(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

(d) discharge in insolvency proceedings; and

(e) any other discharge of which the holder has notice when he takes the instrument.

None of the defenses advanced by defendants falls within the exceptions enumerated in Section 3–305. Plaintiff's recovery, therefore, would be automatic if he could meet his burden of proving that he is in all respects a holder in due course of a negotiable instrument. U.C.C. § 3–307(3).

■ Defendants contend that plaintiff does not qualify as a holder in due course, and is therefore subject to claims and defenses, because the note was acquired in connection with a bulk sale. U.C.C. § 3–302(3)(c) provides that:

A holder does not become a holder in due course of an instrument . . . by accepting it as part of a bulk transaction not in regular course of business of the transferor.

Defendants argue that the sale of the Green Mountain Inn, with all of its equipment, fixtures and other contents, constituted a bulk sale. Relying on the New Jersey Study Comments to U.C.C. § 3–302, they suggest that all bulk sales, due to their magnitude and unusual nature, are out of the ordinary course of business and put all who accept notes incident to such transactions on constructive notice of claims or defenses on the instrument.

Defendants, however, misconstrue Section 3–302(3)(c). As U.C.C. Study Comment 3 makes clear, the section is intended to prevent a holder from acquiring holder in due course status only when he is a purchaser in bulk and takes an instrument as part of his purchase. It does not apply when he is a seller in bulk and receives an instrument in exchange for his sale. The purpose of the provision is to ensure that a new entity which takes over substantially all the assets of an old entity cannot acquire better rights in the old entity's paper. Its aim is analagous to that of Uniform Commercial Code Article 6, which requires bulk sellers out of the ordinary course of business to give prior notice to unsecured creditors, thereby protecting creditors against fraudulent liquidations of businesses. *See* U.C.C. § 6–101, Comments 1–5. "It has particular application to the purchase by one bank of a substantial part of the paper held by another bank which is threatened with insolvency and seeking to liquidate its assets." U.C.C. § 3–302, Comment 3. Clearly, Section 3–302(3)(c) does not prevent plaintiff from claiming the status of a holder in due course. Defendants have cited no cases in support of their theory and, indeed, no reported case has ever so held. *See generally Federal Deposit Insurance Corporation v. Webb,* 464 F.Supp. 520 (E.D. Tenn.1978); *Third National Bank in Nashville v. Hardi-Gardens Supply of Illinois, Inc.,* 380 F.Supp. 930 (M.D.Tenn.1974); *Henkin, Inc. v. Berea Bank & Trust Co.,* 566 S.W.2d 420 (Ct. of App. of Ky.1978); *Pugatch v. David's Jewelers,* 53 Misc.2d 327, 278 N.Y.S.2d 759 (Civ.Ct. of City of N.Y. 1967).

■ Defendants next contend that plaintiff is not entitled to automatic recovery on the promissory note because, whether or not Section 3–302(3)(c) applies, he has failed to meet his statutory burden of proving that he is in all respects a holder in due course (or a transferee from a holder in due course). *See* U.C.C. § 3–307(3). Concededly, plaintiff could have made a far more effective presentation of his case had he submitted an affidavit or affidavits affirmatively demonstrating that the note was

taken for value, in good faith, and without notice of a claim or defense. While plaintiff strenuously asserts in his reply brief that he could not possibly have had notice that the contract underlying the promissory note would not be performed, it being merely executory at the time he took the note, defendants have alleged fraud in the inducement of the contract and the promissory note. These defenses, if true, would have arisen prior to the time PP Inc. took the promissory note. Plaintiff has not demonstrated lack of awareness of such defenses. As the record currently stands, it can not be said with certainty that PP Inc. took the promissory note without notice of a claim or defense.[1]

■ It is not necessary, however, to decide whether plaintiff meets the requisites of a holder in due course because the note on which he sues is clearly not a negotiable instrument. For an instrument to be negotiable, it must satisfy each of the requirements outlined in U.C.C. § 3–104(1). It must:

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or bearer.

If any one of elements (a) through (c) is lacking, the instrument is not negotiable and Article 3 of the Uniform Commercial Code does not apply.[2]

The McGuires' note upon which plaintiff seeks to recover fails of negotiability because it is not, on its face, payable either on demand or at a definite time. The note calls for three installments of interest to be paid on "the 5th day of October, November, and December, 1979". It also contains an acceleration clause giving the holder the option of declaring the entire balance of principal, with interest, due and payable prior to maturity upon the makers' default on any installment of "principal or interest". Nowhere on the instrument's face, however, has a time for repayment of principal been specified.

Under U.C.C. § 3–109:

An instrument is payable at a definite time if by its terms it is payable

(a) on or before a stated date or at a fixed period after a stated date; or

(b) at a fixed period after sight; or

(c) at a definite time subject to any acceleration; or

(d) at a definite time subject to extension at the option of the holder, or to extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event.

This promissory note clearly contains none of the provisions necessary to make it payable at a definite time.

■ An instrument may also be negotiable if it is payable on demand. "Instruments payable on demand include those payable at sight or on presentation and those in which no time for payment is stated." U.C.C. § 3–108. If the note had merely stated that the McGuires promised to pay the Tursis $65,000 at a given rate of interest, there can be no question that the note would have been payable on demand. *See Cohan v. Flanders*, 315 F.Supp. 1046 (S.D. Ga.1970); *Master Homecraft Co. v. Zimmerman*, 208 Pa.Super. 401, 222 A.2d 440

---

**1.** In this regard, it should be noted that Green Mountain Inn, Inc. was actually named as a *payee* of the McGuires' promissory note. This fact does not change the analysis, however. U.C.C. § 3–302(2) provides that "a payee may be a holder in due course". A payee is entitled to become a holder in due course if he meets the remaining requirements of Section 3–302. *See* Comment 2.

**2.** If an instrument otherwise negotiable fails to meet the requirements of (d) because it is not payable to order or bearer, Article 3 does apply but there can be no holder in due course of the instrument. Such an instrument is known as a "non-negotiable instrument".

(1966); *Ferri v. Sylvia*, 214 A.2d 470 (Sup.Ct. of R.I.1965). Here, however, it is apparent from the face of the instrument that the parties did not intend for this note to be payable on demand, nor would any reasonable person so interpret it. Were the note payable on demand, for example, there would be no need for an acceleration clause. Moreover, no note payable on demand would specify a fixed amount of interest payable for the following three months and make no provision for interest thereafter. One can speculate that the parties intended the note to mature at a definite time approximately three months after the date it was signed. Exactly what time was intended, however, is impossible to ascertain from the face of the note. When a note is payable only at an indefinite time in the future, and parol evidence is required to supplement its terms, the note is not a negotiable instrument within the meaning of Article 3 of the Uniform Commercial Code. *Barton v. Scott Hudgens Realty & Mortgage, Inc.*, 136 Ga.App. 565, 222 S.E.2d 126 (1975); *Williams v. Cooper*, 504 S.W.2d 564 (Ct. of Civ.App. of Tex.1973). U.C.C. § 3–304 provides that: "The purchaser of [a negotiable instrument] has notice of a claim or defense if ... the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay ..." Because this instrument is not negotiable, however, it is not necessary to reach the question whether its facial inadequacy put plaintiff on constructive notice of a claim or defense under § 3–304.

■ The fact that the McGuires' promissory note is not a negotiable instrument within the meaning of Article 3 does not mean that it cannot be enforced as a contract. *Harris v. Firth*, 68 A. 1064 (Sup.Ct. of N.J.1908). The assignee of a simple contract, however, takes the contract subject to all claims and defenses arising out of that contract. *Talcott v. H. Corenzwit and Company*, 76 N.J. 305, 309–11, 387 A.2d 350 (1978). Plaintiff, therefore, is not entitled

to automatic recovery on the McGuires' instrument on this motion for summary judgment.

For the foregoing reasons, plaintiff's motion for summary judgment is denied.

Plaintiff is requested to submit a form of order consistent with this opinion and encompassing the Court's disposition of both motions presented here.