NORTHERN BANK, A NEBRASKA BANKING CORPORATION,
APPELLEE, V. PEFFERONI PIZZA CO., A NEBRASKA CORPORATION,
APPELLANT.

555 N.W.2d 338

Filed October 8, 1996.   No. A-95-118.

J. Patrick Green for appellant.

Steven J. Woolley, of Polack, Woolley & Forrest, P.C., for appellee.

IRWIN, SIEVERS, and INBODY, Judges.

SIEVERS, Judge.

Northern Bank (Northern) brought suit against Pefferoni Pizza Co. (Pefferoni) on a promissory note issued as security for the underlying obligation of Walter Peffer, Jr. The Douglas County District Court granted Northern's motion for summary judgment, having found that the note was a negotiable instrument and that Northern was a holder in due course of the note. For the reasons set forth below, we reverse.

## FACTUAL BACKGROUND

On September 30, 1987, Duane J. Dowd, as president of Pefferoni, signed a promissory note in the amount of $125,000 payable to W. E. Peffer Enterprises, Inc. (W. E. Enterprises). Attached to the note was a personal guaranty signed by Dowd and Ray L. Gustafson. The note was executed pursuant to a purchase agreement, also dated September 30, 1987, whereby Pefferoni purchased certain businesses from W. E. Enterprises. Interest on the note accrued at 11.5 percent per annum from September 30, 1987. In the event of default, W. E. Enterprises was entitled to the entire unpaid principal balance and the accrued but unpaid interest. Interest on the note would accrue at 12 percent per annum following default. Additionally, the following provision was included in the promissory note:

> 2. Principal and the interest which is provided for in the preceding paragraph shall be paid in sixty (60) equal monthly installments of $2,748.75. Such installments shall commence on November 1, 1987, and shall be paid on the first day of each month thereafter. The rate of interest provided by this Note is initially set at a rate to correspond to the interest rate presently being paid by W. E. Peffer Enterprises, Inc., a Nebraska corporation, on its separate obligations payable to Mutual State Bank and Etcetera Investments, Ltd. (collectively the "Underlying Notes"). The Maker hereof has certain rights under Purchase Agreement dated September 30, 1987, to negotiate a new

loan for W. E. Peffer Enterprises, Inc., to replace the Underlying Notes in an amount up to $125,000.00 at a lower rate of interest and for a term extending up to 84 months from and after the closing on the purchase. In the event that the Maker hereof negotiates such a loan, then as of the date that the Underlying Notes are paid in full or reduced with the proceeds of the new loan, the remaining principal balance due and owing under this Note shall be re-amortized over such term and at such rate of interest as may be negotiated for W. E. Peffer Enterprises, Inc., by the Maker hereof on the new loan. When and if such events occurs [sic], a written amendment evidencing such modification shall be executed by the Maker and Holder hereof.

On January 14, 1988, Walter Peffer, Jr., executed a personal promissory note (Peffer note) in the amount of $35,000 for the purpose of obtaining a loan from Northern. As security for the Peffer note, W. E. Enterprises, via the signature of Walter Peffer, Jr., as president, assigned the above-described promissory note of September 30, 1987, payable by Pefferoni to W. E. Enterprises, to Northern. We shall hereafter refer to the September 30, 1987, note as the "collateral note." Walter Peffer, Jr., by his own admission, failed to make any payments on the Peffer note from and including the payment due September 1, 1988, and effective October 1, 1988, Northern elected to declare the entire unpaid principal balance and accrued interest under the Peffer note to be immediately due and filed suit. On September 1, 1989, the Douglas County District Court granted Northern's motion for summary judgment against Walter Peffer, Jr., on the Peffer note.

Regarding the collateral note, no payment was made after the regularly scheduled monthly payment of July 1, 1988. On September 22, 1988, Northern notified Pefferoni that it was in default as a result of failure to pay the installments due August 1 and September 1, 1988. After Pefferoni failed to cure the default, Northern elected to declare the entire unpaid principal balance and accrued interest under the collateral note to be immediately due and payable. Northern contends that it never received any payments on the collateral note from any person or entity.

Northern filed suit against Pefferoni on April 19, 1993, seeking judgment for the unpaid principal balance and accrued interest on the collateral note in the amount of $170,676.96. In the petition, Northern alleged that the total sum due under the Peffer note was $57,053.84. In its answer, Pefferoni denied that it was liable to Northern on the collateral note. Among other defenses, Pefferoni alleged that Northern was not a holder of the collateral note, that the collateral note did not contain an unconditional promise or order to pay a sum certain in money, that W. E. Enterprises had failed to perform its obligations under the purchase agreement, that Walter E. Peffer, Jr., had made misrepresentations for the purpose of inducing Pefferoni to execute the purchase agreement, that the collateral note lacked consideration, and that Northern had no standing to bring an action in an amount in excess of its security interest in the collateral note.

Northern subsequently filed for summary judgment, and Pefferoni responded with a motion for judgment on the pleadings. At the hearing on both matters, Northern submitted into evidence a certified copy of the judgment entered by the Douglas County District Court against Walter Peffer, Jr., on the Peffer note; two affidavits of Brenda L. Lawson, a vice president of Northern; the original $125,000 collateral note; an affidavit of Walter Peffer, Jr.; and certain portions of the deposition of Dowd. Pefferoni submitted the balance of the Dowd deposition.

The district court found that Northern was a holder in due course of the collateral note and that the collateral note was a negotiable instrument. As a result, the district court overruled Pefferoni's motion for judgment on the pleadings and granted Northern's motion for summary judgment. The court ordered that Northern be awarded an amount equal to the indebtedness on the collateral note as of November 21, 1994, but did not specify the amount of that judgment. (Our disposition of this case allows us to overlook the fact that a judgment for money must specify with definiteness and certainty the amount for which it is rendered and must be in such a form that a clerk is able to issue an execution upon it which an officer will be able to execute without requiring external proof and another hearing.

See *Lenz v. Lenz*, 222 Neb. 85, 382 N.W.2d 323 (1986).)
Northern has since become American National Bank.

## ASSIGNMENTS OF ERROR

Pefferoni contends that the district court erred in granting
summary judgment in favor of Northern. Specifically, Pefferoni
argues that the district court erred in awarding Northern the full
amount of its prayer on the grounds that it was a holder in due
course, in finding that the collateral note was a negotiable
instrument, and in finding that the question of Northern's good
faith in taking the collateral note did not raise a triable issue of
fact.

## STANDARD OF REVIEW

■ On questions of law, an appellate court has an obligation
to reach its own conclusions independent of those reached by
the lower courts. *Kelley v. Benchmark Homes, Inc.*, 250 Neb.
367, 550 N.W.2d 640 (1996).

## ANALYSIS

■ It appears that the questions presented are matters of law.
We initially note that the applicable law, the Uniform
Commercial Code (U.C.C.), has been amended and recodified
since the issuance of the collateral note. Changes in the law
became effective in 1991 and 1992. Notably, changes to article
3 on negotiable instruments became operative on January 1,
1992. The transaction in question took place prior to 1992.
Statutes covering substantive matters in effect at the time of the
transaction govern, not later enacted statutes. *Ashland State
Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 520 N.W.2d
189 (1994). Consequently, the U.C.C. provisions appearing in
the 1980 reissue of the Nebraska Revised Statutes apply in this
case.

■ The party moving for summary judgment has the bur-
den to show that no genuine issue of material fact exists and
must produce sufficient evidence to demonstrate that the mov-
ing party is entitled to judgment as a matter of law. *Boyd v.
Chakraborty*, 250 Neb. 575, 550 N.W.2d 44 (1996). After the
moving party has shown facts entitling it to a judgment as a
matter of law, the opposing party has the burden to present evi-

dence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Id.* Pefferoni has disputed the collateral note's status as a negotiable instrument both in its answer and in this appeal.

In order to recover under article 3 of the U.C.C., the writing in question must be "an instrument." See Neb. U.C.C. § 3-301 (Reissue 1980) (recodified under § 3-301 (Reissue 1992)). In article 3, "instrument" means a negotiable instrument. See Neb. U.C.C. § 3-102(e) (Reissue 1980) (recodified under Neb. U.C.C. § 3-104(b) (Reissue 1992)). See, also, § 3-102(a) (Reissue 1992) ("[t]his article applies to negotiable instruments"); § 3-104, comment 1 (Reissue 1992) ("[t]he definition of 'negotiable instrument' defines the scope of article 3"). Whether an instrument is a negotiable instrument is a question of law. *Cartwright v. MBank Corpus Christi, N.A.*, 865 S.W.2d 546 (Tex. App. 1993).

Pefferoni argues that the trial court erred in finding the collateral note to be a negotiable instrument. Pefferoni raised this issue in its answer by alleging that the collateral note did not contain an unconditional promise or order to pay a sum certain in money. Pursuant to § 3-104(1) (Reissue 1980) (recodified under § 3-104(a) (Reissue 1992)), any writing, to be a negotiable instrument, must (a) be signed by the maker or drawer; (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by article 3; (c) be payable on demand *or* at a definite time; and (d) be payable to order or to bearer.

As stated above, § 3-104(1)(c) (Reissue 1980) requires that to be a negotiable instrument, the writing must be payable on demand or at a definite time, and this seems to be the determinative point in this appeal. Instruments payable on demand include those payable at sight or on presentation and those in which no time for payment is stated. Neb. U.C.C. § 3-108 (Reissue 1980) (recodified under § 3-108(a) (Reissue 1992)). The collateral note, as described above, is not payable at sight or on presentation. In fact, the collateral note contains a schedule for payment. Thus, the collateral note is not payable on

demand, and the issue then becomes whether the collateral note is payable at a definite time.

■ Neb. U.C.C. § 3-109(1)(d) (Reissue 1980) (recodified under § 3-108(b)(iv) (Reissue 1992)) states that an instrument is payable at a definite time if by its terms it is payable at a definite time subject to extension to a further definite time at the option of the maker. The collateral note was payable in 60 monthly installments of $2,748.75, commencing November 1, 1987, which is at first blush a definite time, as courts have held that monthly installments are payable at a definite time. See, e.g., *Corbin Deposit Bank & Trust Co. v. Mullins*, 641 S.W.2d 760 (Ky. App. 1982); *Standard Premium Plan Corp. v. Hirschorn*, 56 Misc. 2d 687, 290 N.Y.S.2d 226 (1968). However, the collateral note additionally provided that Pefferoni, pursuant to the purchase agreement, could negotiate a new loan to replace the underlying notes owed by W. E. Enterprises in an amount up to $125,000 "at a lower rate of interest and for a term extending up to 84 months from and after the closing on the purchase." If Pefferoni renegotiated such a loan, as of the date that the underlying notes were paid in full or reduced with the proceeds of the new loan, the remaining principal balance due and owing under the collateral note would be reamortized over such term and at such rate of interest as negotiated on the new loan.

Reamortization of the collateral note is an event uncertain as to both occurrence and time of occurrence. However, if the underlying notes are not renegotiated, then the collateral note is payable at a definite time, $2,748.75 on the first of every month. This is not a case where the note is payable only upon an act or event uncertain as to time of occurrence, which makes it not payable at a definite time. See § 3-109(2) (Reissue 1980). Nor is this a case where payment is conditioned upon an event uncertain to occur. See, e.g., *Calfo v. D.C. Stewart Co.*, 717 P.2d 697 (Utah 1986) (promissory note, which was payable only if buyers exercised their option to purchase motel, was held to be both conditional and indefinite on its face). Instead, payment in the instant case is mandated by the terms of the collateral note regardless of whether the underlying notes are renegotiated. The question before us is whether the renegotiation clause of

the collateral note makes the collateral note payable at an indefinite time.

The time of payment is definite if it can be determined from the face of the instrument. § 3-109, comment 2 (Reissue 1980) (noting change in statutory language from "fixed or determinable future time" to "definite time"). See, also, § 3-108, comment (Reissue 1992) (broadening "former section 3-109 somewhat by providing that a definite time includes a time readily ascertainable at the time the promise or order is issued"). If the extension is to be at the option of the maker, a definite time limit must be stated or the time of payment remains uncertain and the instrument is not negotiable. § 3-109, comment 5 (Reissue 1980).

> When the maker or acceptor has the option to extend the time of payment or when the time is extended automatically upon a specified act or event, the holder has no power to determine when payment will be made. Thus, unless the option to extend is limited to an extension to a definite time, the holder will not know when he can expect payment. As a result, when the time for payment may be extended by the maker or acceptor or automatically upon the occurrence of a specified event, the instrument will be payable at a definite time only if this right is limited to extension to a further definite time.

4 William D. Hawkland & Lary Lawrence, Uniform Commercial Code Series § 3-109:05 at 141 (1994).

An instrument is payable at a definite time if by its terms it is payable (a) on or before a stated date or at a fixed period after a stated date or (b) at a fixed period after sight. § 3-109(a) and (b) (Reissue 1980) (recodified under § 3-108(b) (Reissue 1992), stating in part that "[a] promise or order is 'payable at a definite time' if it is payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued").

The contingency known as the renegotiation clause of the collateral note leaves uncertain (1) the closing date of the purchase agreement and (2) the date the underlying notes might be paid or reduced if the loan is ever renegotiated. It is possible

that the underlying notes could be renegotiated on one date with payment or reduction of those notes not occurring until a later date. Since the terms of the reamortization of the collateral note are dependent on these two dates, it is uncertain when Pefferoni will have to pay off the collateral note. We acknowledge that the collateral note will have to be paid off within 84 months following payment or reduction of the underlying notes. The question is whether this is a further definite time.

> If the instrument is payable upon an event uncertain as to time of occurrence, it is also not payable at a definite time. It is irrelevant that the event is certain to occur or even that it has already occurred. Instruments which are payable "at death" or "upon the sale of the house" or "at earliest convenience" are not payable at a definite time. In none of these cases can a holder determine when payment is due by reference to the instrument alone.

4 Hawkland & Lawrence, *supra*, § 3-109:02 at 136. Furthermore, a note payable upon the acceptance of a loan commitment is not payable at a definite time. See, e.g., *Barton v. Scott Hudgens Realty*, 136 Ga. App. 565, 222 S.E.2d 126 (1975).

In *Cartwright v. MBank Corpus Christi, N.A.*, 865 S.W.2d 546 (Tex. App. 1993), the court found that a provision in a note allowing the maker the option to extend the note for up to 4 years constituted a definite time. However, *Cartwright* is distinguishable from the case before us. In *Cartwright*, the note was due September 24, 1985, subject to the maker's option to extend the note for up to 4 years. Thus, the note was payable at a fixed period, 4 years, after a stated date, September 24, 1985. In the instant case, the stated date, from which an extension of up to 84 months may be made, is the date of payment or reduction of the underlying notes, a date which, as discussed above, cannot be determined from the face of the collateral note.

The time of payment of the collateral note cannot be determined from the face of the note, nor was it reasonably ascertainable at the time the note was issued. Therefore, the collateral note is not payable at a definite time subject to extension to a further definite time at the option of Pefferoni. See § 3-109, comment 2 (Reissue 1980). The collateral note is not a negotiable instrument, and consequently, Northern is not a holder in

due course. See Neb. U.C.C. § 3-302(1) (Reissue 1980). The collateral note may be enforceable as a contract and therefore subject to all claims and defenses arising out of that contract, see *P P Inc. v. McGuire*, 509 F. Supp. 1079 (D.N.J. 1981), a matter which we need not decide on this appeal, but it is not enforceable as a negotiable instrument under article 3 of the U.C.C.

## CONCLUSION

We conclude that the district court erred in granting summary judgment in favor of Northern, as the collateral note is not a negotiable instrument and Northern is not a holder in due course. Accordingly, we reverse the judgment of the district court.

REVERSED.