Northern Bank, a Nebraska banking corporation, appellee, v. Pefferoni Pizza Co., a Nebraska corporation, appellant.

562 N.W.2d 374

Filed April 24, 1997.    No. S-95-118.

J. Patrick Green for appellant.

Steven J. Woolley, of Polack, Woolley & Troia, P.C., for appellee.

White, C.J., Caporale, Wright, Connolly, Gerrard, Stephan, and McCormack, JJ.

Caporale, J.

The plaintiff-appellee, Northern Bank, seeks to recover under a promissory note made by the defendant-appellant, Pefferoni

Pizza Co. By its answer, Pefferoni Pizza challenged the negotiability of the note and pled a variety of defenses. The district court found the note to be negotiable and sustained Northern's motion for summary judgment. Pefferoni Pizza thereupon appealed to the Nebraska Court of Appeals, assigning to the district court four errors, which combine to assert that the district court wrongly found that the note was negotiable and that Northern was the holder in due course thereof. The Court of Appeals ruled that the note was not negotiable and therefore reversed the judgment of the district court. *Northern Bank v. Pefferoni Pizza Co.*, 5 Neb. App. 50, 555 N.W.2d 338 (1996). Northern thereafter successfully petitioned for further review by this court. We now affirm the judgment of the Court of Appeals.

We review this case under the rule that summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Central Neb. Broadcasting v. Heartland Radio,* 251 Neb. 929, 560 N.W.2d 770 (1997).

On September 30, 1987, Pefferoni Pizza agreed to purchase certain businesses from W. E. Peffer Enterprises, Inc. Pursuant to this agreement, Duane J. Dowd, as president of Pefferoni Pizza, signed a $125,000 promissory note payable to the order of Peffer Enterprises. This note, which will hereafter be referred to as the "collateral note," included the following provision:

> 2. . . . The Maker hereof has certain rights under Purchase Agreement dated September 30, 1987, to negotiate a new loan for [Peffer Enterprises] to replace the Underlying Notes in an amount up to $125,000.00 at a lower rate of interest and for a term extending up to 84 months from and after the closing on the purchase. In the event that the Maker hereof negotiates such a loan, then as of the date that the Underlying Notes are paid in full or reduced with the proceeds of the new loan, the remaining principal balance due and owing under this Note shall be re-amortized over such term and at such rate of interest as

may be negotiated for [Peffer Enterprises] by the Maker hereof on the new loan. When and if such events occurs [sic], a written amendment evidencing such modification shall be executed by the Maker and Holder hereof.

On January 14, 1988, Northern loaned Walter Peffer, Jr., $35,000, which loan was evidenced by a promissory note hereafter referred to as the "Peffer note." As security for this $35,000 loan, Walter Peffer assigned the September 30, 1987, collateral note to Northern. On July 25, 1988, Northern advised Pefferoni Pizza of the assignment and that all payments on the collateral note were to be made directly to Northern. Pefferoni Pizza made all regular payments on this collateral note directly to Peffer Enterprises up through and including the installment due July 1, 1988, after which no further payments were made. Walter Peffer defaulted on his note. On September 1, 1989, the district court entered a judgment against him on that note in favor of Northern, which Walter Peffer has failed to pay.

Northern's position is that the collateral note is a negotiable instrument and that as it is the holder in due course thereof, it holds the note free of any defenses Walter Peffer may have against Pefferoni Pizza.

Whether a document is a negotiable instrument is a question of law. See *Ford Motor Credit Co. v. All Ways, Inc.*, 249 Neb. 923, 546 N.W.2d 807 (1996). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Law Offices of Ronald J. Palagi v. Dolan*, 251 Neb. 457, 558 N.W.2d 303 (1997).

For a writing to be a negotiable instrument, it must, among other things, be payable on demand or at a definite time. Neb. U.C.C. § 3-104(1)(c) (Reissue 1980). See *P P Inc. v. McGuire*, 509 F. Supp. 1079 (D.N.J. 1981) (failing to make note payable on demand or at definite time precludes negotiability). Instruments payable on demand include those payable at sight or on presentation and those in which no time for payment is stated. Neb. U.C.C. § 3-108 (Reissue 1980). The instant writing is not payable at sight or on presentation; thus, it is not payable on demand.

An instrument is payable at a definite time if by its terms it is payable (a) on or before a stated date or at a fixed period after

a stated date, or (b) at a fixed period after sight, or (c) at a definite time subject to any acceleration, or (d) at a definite time subject to extension at the option of the holder, or to extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event. Neb. U.C.C. § 3-109(1) (Reissue 1980). The time for payment is definite if it can be determined from the face of the instrument. § 3-109, comment 2. If an extension is to be at the option of the maker, a definite time limit must be stated or the time of payment remains uncertain and the instrument is not negotiable. § 3-109, comment 5.

The collateral note recites that it was made "in conjunction with a certain Purchase Agreement dated September 30, 1987," and stipulated it be paid in 60 equal monthly installments of $2,748.75 commencing on the first day of November 1987, and on the first of every month thereafter, subject to the extension described in the provision set forth previously. Therefore, if Pefferoni Pizza were to negotiate a new loan for the underlying notes, the repayment schedule of the collateral note would be altered to match the repayment schedule of the renegotiated underlying notes. Although the renegotiation clause in the collateral note declares that the extension cannot exceed 84 months from and after the closing on the purchase, the note does not state the date of closing.

Northern recognizes that in order to be definite, the time for payment must be determinable from the face of the collateral note, and contends that by the references made in the note to other documents, it becomes clear that any extension could not exceed 84 months from and after September 30, 1987. More specifically, Northern argues:

> A promissory note made at the same time and in conjunction with a purchase agreement, secured by a security agreement also made and given at the same time and as part of the same transaction and which specifies that interest accrues from its date and that the first payment of principal and interest will be due one month from its date can only lead to the conclusion that the purchase was closed at the same time and on the same date that the purchase agreement, note and security agreement were

signed. If the purchase contemplated by the Purchase Agreement was to be closed at some date after the date of the Collateral Note and the Purchase Agreement, then the Collateral Note would not have specified that interest was to accrue from the date of the Collateral Note. Rather, it would have specified that the interest was to accrue only upon the later closing date.

Brief for appellee in support of petition for further review at 8.

Although Northern's argument is a plausible interpretation of the various provisions of the note, it is equally plausible to suggest that if the closing was in fact held on September 30, 1987, contemporaneously with the execution of the collateral note, there would have been no reason for the note to refer to an unspecified closing date; rather, the note would simply have recited that the extension could not be longer than 84 months thereafter, or through September 30, 1994. In short, the inferences to be drawn from the recitations in the note are far too ambiguous to permit us to conclude that the closing of the purchase necessarily took place on September 30, 1987. That being so, we must conclude that the collateral note is not on its face payable at a definite time and that it is therefore not negotiable.

The judgment of the Court of Appeals being correct, it is, as noted in the first paragraph hereof, affirmed.

AFFIRMED.