DAVID BOVARNICK & another[1] *vs.* FLEET NATIONAL BANK. No. 05-P-151. January 9, 2006. *Limitations, Statute of. Statute, Construction. Uniform Commercial Code,* Bank. *Consumer Protection Act,* Bank.

This is an appeal from a summary judgment in favor of the defendant dismissing the plaintiffs' claims that the defendant's failure to redeem two bank certificates,[2] evidenced by passbooks, was in breach of contract and a violation of G. L. c. 93A. The bank records indicate that the two accounts were closed in 1994. This was confirmed by Internal Revenue Service Form 1099 statements the plaintiffs submitted to their tax accountant stating the accounts were closed. Despite not having received 1099 forms showing interest for the accounts after 1994, the plaintiffs did not make a demand for the funds until 2001, and did not bring this action until 2002. They claim that the judge erred by applying the six-year contract statute of limitations instead of G. L. c. 106, § 3-118(*e*), of the version of the Uniform Commercial Code (UCC) adopted by Massachusetts in 1998 (St. 1998, c. 24, § 8) (1998 UCC), which provides that the period of limitations for actions on certificates of deposit only begins to run when a demand for payment is made.[3] The plaintiffs also contend that the judge erred in dismissing their c. 93A claims, because the claims raised questions of fact. We affirm.

1. *Statute of limitations.* Predecessors to the defendant bank issued the two certificates, one in 1984 and one in 1989. The two passbooks are similar and

---

[1]Cheryl Bovarnick.

[2]Originally the plaintiffs claimed that the bank was also in breach of contract for failing to redeem a third passbook. Upon investigation, the bank learned that the funds had been withdrawn in 1997 and had been used to purchase a cashier's check payable to the plaintiffs. The check had not been cashed and the funds escheated to the Commonwealth as abandoned property. The plaintiffs were able to recover the proceeds from the Commonwealth.

[3]Because of our view that the 1957 version of the UCC (St. 1957, c. 765, § 1, repealed by St. 1998, c. 24, § 8) (1957 UCC) does not apply to the documents at issue,

state that they are neither transferable nor negotiable. Other terms of the deposits are set forth in the margin.[4] Conceding that the certificates would not be covered by Article 3 of the 1998 UCC because they are not negotiable, the plaintiffs argue that they are within Article 3 of the earlier 1957 UCC (St. 1957, c. 765, § 1, repealed by St. 1998, c. 24, § 8).

The plaintiffs' contention is incorrect. The only non-negotiable documents covered by Article 3 of the 1957 UCC are those described in § 3-805, as appearing in St. 1957, c. 765, § 1 (repealed by St. 1998, c. 24, § 8), which provided that Article 3:

> "applies to any instrument whose terms *do not preclude transfer* and which is otherwise negotiable within this Article but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument" (emphasis supplied).

Subsection 3 of § 3-104 of the 1957 UCC, upon which the plaintiffs rely, and which is set forth in the margin,[5] is, as pointed out in paragraph 6 of the Uniform Commercial Code comment to § 3-104, "intended to make clear the same policy expressed in Section 3-805." The comment to the latter section specifically points out that § 3-805 "does not refer to a writing, such as a note containing an express condition, which is not negotiable and is entirely outside of the scope of this Article and to be treated as a simple contract. It refers to a particular type of instrument which meets all requirements as to form of a negotiable instrument except that it is not payable to order or to bearer."

The cases and commentators are in accord. Except for writings within § 3-805 of the 1957 UCC, Article 3 does not cover nonnegotiable instruments. *Isaacson* v. *Isaacson*, 508 So. 2d 1131, 1134 (Miss. 1987) (certificates of deposit that contain terms that preclude transfer "are not subject to Article 3 of the U.C.C."). *Holloway* v. *Wachovia Bank & Trust Co.*, 333 N.C. 94, 99-100 (1992) (same). See *Citizens Natl. Bank of Orlando* v. *Bornstein*, 374 So. 2d. 6, 12-13 (Fla. 1979). See also *P P Inc.* v. *McGuire*, 509 F. Supp. 1079,

---

we need not consider whether either § 3-122(2) of the 1957 UCC or § 3-118(*e*) of the 1998 UCC applies to these passbooks. See discussion *infra*. See also note 6, *infra*.

[4]The words "term account" appear on the outer cover of each passbook, and the words "not transferable" appear on the inner cover. The next page is headed "Term Account" and includes the term, the amount, the names of the depositors, the maturity date, and the interest rate. The next page, entitled "Term Deposit Certificate," contains numerous provisions and includes the following statements: "This certificate shall be renewed automatically for successive periods equal to the term of this Certificate unless your entire deposit is withdrawn on or within 10 days after the maturity date appearing above or on any other maturity date, or unless you are notified to the contrary by the Bank before such maturity date or any other maturity date"; "This Certificate and the deposit represented thereby are neither negotiable nor assignable except as collateral for any loan thereon" by a banking institution; and "Not transferable except on the records of this institution." The passbooks never use the words "certificates of deposit," a term often used to describe a negotiable certificate issued by a bank. See § 3-104(2)(*c*) of the 1957 UCC, as appearing in St. 1958, c. 542, § 5, and § 3-104(*j*) of the 1998 UCC.

[5]Subsection 3 of § 3-104, as appearing in St. 1957, c. 765, § 1, provides: "As used in other Articles of this chapter and as the context may require, the terms 'draft', 'check', 'certificate of deposit' and 'note' may refer to instruments which are not negotiable within this Article as well as to instruments which are so negotiable."

1085 (D.N.J. 1981) (nonnegotiable note not covered by Article 3); 5A Anderson, Uniform Commercial Code § 3-104.13 (3d ed. 1994) ("If paper does not satisfy all of the requirements of UCC § 3-104 it is not negotiable and, with the exception made by UCC § 3-805, Article 3 of the Code is not applicable"); Harris, Non-Negotiable Certificates of Deposit: An Article 9 Problem, 29 UCLA L. Rev. 330, 333 (1981). Since the passbooks are not covered by Article 3 of the 1957 Code, neither § 3-122(2) of the 1957 UCC nor § 3-118(*e*) of the 1998 UCC governs the period when the statute of limitations begins to run.[6]

2. *Plaintiffs' c. 93A claim.* The deposition of the officer in charge of research acknowledged that the bank did not attempt to find the cashiers' checks reflecting the 1994 redemptions. The plaintiffs base their c. 93A claim on the failure of the bank to investigate the checks when at the same time it was able to find spreadsheets covering the period. The deposition testimony of the officer indicated the following. The bank, as did the predecessor banks that issued the passbooks, stored documents on microfilm in an offsite facility. The bank is charged for storage, and consistent with its policy of retaining documents for seven years, it informs the storage facility to store the documents up to a certain date and thereafter to destroy them. The bank does not pay for storage after the date set as the destruction date. It was the research officer's understanding that the facility customarily destroys documents in its possession on the seven-year anniversary date of a document's creation. Where a document is sought after that date, the bank does not, and did not here, investigate whether the offsite facility still has the microfilms. The officer explained that the bank was able to retrieve spreadsheets showing some information for that period because the spreadsheets were not paper records but, rather, were available system records. Spreadsheets do not show to whom a check was issued.

While it might have been preferable for the bank to have made inquiry of the storage depository, even though the inquiry was likely to have been futile, the plaintiffs have not produced any affidavits, depositions, or other material suggesting that the bank destroyed or intentionally withheld any documents or otherwise engaged in any unfair or deceptive practice. The negative inference urged by the plaintiffs from the fact that some, but not all, records could be found does not, without more, raise a genuine issue of material fact, see *Federal Deposit Ins. Corp.* v. *Csongor*, 391 Mass. 737, 742-743 (1984), as to whether there was a violation of c. 93A. See *PMP Assocs.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975).

*Judgment affirmed.*

*Alan S. Fanger* for the plaintiffs.
*Bruce D. Berns* for the defendant.

---

[6]The plaintiffs argue that even if the certificates are not within the UCC, a demand for payment is necessary to start the period of limitations. We note that the plaintiffs do not appear to have made this argument to the trial judge. In any event, the cases they cite in support of their argument are inapposite where, as here, the bank informed the plaintiffs that their accounts were closed. Cf. *Tillman* v. *Guaranty Trust Co.*, 253 N.Y. 295, 297 (1930). The cause of action accrued and the statute of limitations began to run when the plaintiffs knew or should have known the accounts were closed by the bank, not when they presented the books for payment many years later. Because both the statute of limitations for contract and the statute of limitations for tort had run at the time of the bringing of this action, we need not consider which is applicable.