Charles and Suzanne **CARTWRIGHT**,
Appellants,

v.

**MBANK CORPUS CHRISTI,**
N.A., **Appellee.**

No. 13–92–404–CV.

Court of Appeals of Texas,
Corpus Christi.

Oct. 21, 1993.

Rehearing Overruled Nov. 17, 1993.

Paul G. Kratzig, Corpus Christi, for appellants.

Ron Simank, Pipitone, Scahuer & Simank, Corpus Christi, for appellee.

Before FEDERICO G. HINOJOSA, Jr. and KENNEDY and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

After a bench trial on a suit to collect on a promissory note, the trial court rendered judgment in favor of MBank Corpus Christi, N.A. (MBank). Appellants raise ten points of error, three attacking MBank's status as holder of the note, four challenging the trial court's findings of fact and conclusions of law regarding appellants' defenses, and three challenging the judgment for embracing issues not encompassed by the pleadings. We affirm the judgment in favor of MBank against appellants, modify the judgment by rendering judgment in favor of appellants against Enterprise Development, and remand the case to the trial court for a determination of the amount of exemplary damages due appellants.

MBank contracted to provide construction financing for Enterprise Development, a Texas general partnership. To obtain the financing, Enterprise Development, on March 23, 1983, executed a deed of trust in favor of MBank, conveying real property in Corpus Christi. In September 1984, Enterprise Development sold appellants, Charles and Suzanne Cartwright, a four-plex apartment house located at 2222 Capitan in Corpus Christi. The Cartwrights received a loan of eighty percent of the property's value from Uvalde Savings and Loan Association. Appellants partially paid the remainder of the purchase price of the four-plex with a promissory note made payable to the order of Enterprise Development. The note is dated September 27, 1984, contains a promise to pay $80,000 plus interest at the published prime rate of Corpus Christi National Bank plus two percent, is due September 24, 1985, subject to the maker's option to extend the note for up to four years, and is signed by the Cartwrights. Enterprise Development executed security agreements in MBank's favor on April 23, 1985, and November 12, 1985, giving MBank a security interest in all contracts for sale, accounts receivable, notes, instruments, and proceeds relating to the sale of property, including the Cartwrights' promissory note.

The Cartwrights and Enterprise Development agreed to extend the note on October 25, 1985, and April 6, 1986. These two note extension agreements were signed by the Cartwrights and made payable to the order of Enterprise Development. Enterprise Development, by the indorsement of a general partner, transferred the $80,000 promissory note to MBank. The Cartwrights and MBank agreed to extend the note on September 18, 1986, and September 23, 1987. These two note extension agreements were signed by the Cartwrights and made payable directly to the order of MBank. The last extension agreement extended the note until September 24, 1988. After the promissory note matured on September 24, 1988, MBank demanded payment from the Cartwrights, but the Cartwrights failed to pay, and MBank filed this suit in the 94th District Court of Nueces County.

Enterprise Development defaulted on its obligations to MBank, and MBank obtained a judgment against Enterprise Development for the debt.

The Cartwrights filed a cross-petition against Enterprise Development, alleging fraud and Deceptive Trade Practices–Consumer Protection Act (DTPA) violations. On April 20, 1989, the Cartwrights served separate requests for admission on Enterprise Development and MBank. MBank responded, but Enterprise Development did not. The requests for admission which were served on Enterprise Development were thus deemed admitted. On June 12, 1991, the Cartwrights moved for summary judgment against Enterprise Development and MBank based on the deemed admissions. MBank responded on July 3, 1991. A hearing on the motion for summary judgment was not held until February 25, 1992, at which time the presiding judge of the 94th District Court, Judge Jack Hunter, stated that he would grant the motion against Enterprise Development. The Cartwrights then proceeded to trial with their case against MBank.

Upon MBank's opening argument, Judge Hunter recused himself, and the administrative judge assigned Judge Manuel Bañales to hear the case. On February 26, 1992, the Cartwrights moved for judgment on the ground that summary judgment had already been granted in their favor, but Judge Bañales denied the motion. On March 16, 1992, Judge Hunter, despite having recused himself, signed an order purporting to grant summary judgment in favor of the Cartwrights against Enterprise Development. On March 30, 1992, the Cartwrights again moved for judgment against MBank, arguing that the deemed admissions by Enterprise Development established defenses against MBank. The trial court denied the motion. The trial court entered judgment against the Cartwrights on April 30, 1992.

By their first three points of error, the Cartwrights complain that the note was not a negotiable instrument and that the bank could not be a "holder" of the note. They argue that the trial court thus erred by entering judgment against them.

MBank stipulated that the note was not a negotiable instrument and that it was not a holder in due course. The parties agreed that the note contained a variable interest term and thus failed to evidence an obligation for a certain sum that could be ascertained from the instrument's face.

■■■ Parties may stipulate only to facts, and courts are not bound by stipulations to legal conclusions to be drawn from the evidence. *Smith v. Morris & Co.,* 694 S.W.2d 37, 39 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). For an instrument to be negotiable, the instrument must show the maker's signature, an unconditional promise to pay a sum certain, that it is payable at a definite time or on demand, and that it is payable to order or to bearer. Tex.Bus. & Com.Code Ann. § 3.104(a) (Vernon 1968). A court need find no facts to determine whether the instrument before it is a negotiable instrument; negotiability is a question of law. The parties' stipulation regarding negotiability is not binding on any court.

■■■ A variable rate promissory note which requires interest to be charged at a rate determined by reference to a bank's published prime rate is a promise to pay a sum certain, and if it meets the other requirements of negotiability, is a negotiable instrument. Tex.Bus. & Comm.Code § 3.104 (Vernon 1968); *Amberboy v. Societe de Banque Privee,* 831 S.W.2d 793, 797 (Tex.1992). A note is payable at a definite time even if the note states the maker, holder or acceptor retains an option to extend the note for a further definite time. Tex.Bus. & Com.Code Ann. § 3.109(a) (Vernon 1968). The note in question is payable to order, contains a promise to pay $80,000 plus interest at the published prime rate of Corpus Christi National Bank plus two percent, is due September 24, 1985, subject to maker's option to extend the note for up to four years, and contains the necessary signatures. The note is a negotiable instrument.

■■■ Negotiation is the transfer of a negotiable instrument in such form that the transferee becomes a holder. An instrument which is payable to order is negotiated by delivery with any necessary indorsement. Tex.Bus. & Com.Code Ann. § 3.202(a) (Vernon 1968). The trial court entered findings that Ralph Cook, general partner of Enterprise Development, transferred the note to MBank by his indorsement and that MBank became

the holder of the note. The Cartwrights stipulated to delivery and to the authenticity of Cook's signature. The evidence supports the trial court's findings, and the Cartwrights do not challenge a holder's right to sue on the note. We overrule appellants' first three points of error.

By their fourth point of error, the Cartwrights complain that the trial court erred by refusing to grant their second motion for judgment against Enterprise Development. By their seventh point of error, they complain that the trial court erred by refusing to grant their second motion for judgment against MBank. They argue that Enterprise Development's failure to answer requests for admission resulted in deemed admissions against both Enterprise Development and MBank. By their fifth and sixth points of error, they complain that the trial court's findings of fact are contradicted by the deemed admissions.

■■■ Matters admitted in response to requests for admission are conclusively established as to the party making the admission. TEX.R.CIV.P. 169(2). Enterprise Development failed to respond to the requests for admission which were served upon it. Those requests for admission were thus deemed admitted against Enterprise Development. Enterprise Development thus admitted 1) that it misrepresented assessments against the property, 2) that it misrepresented the fair market value of the property, 3) that it misrepresented the extent of property and rights being sold, 4) that it misrepresented the projected investor's return and the likely rental income, 5) that it breached a no-negative income guaranty, 6) that it knew its representations were false, and 7) that the Cartwrights suffered damages of $107,351. These admissions entitle the Cartwrights to judgment against Enterprise Development. The trial court erred in denying the Cartwrights' motion for judgment against Enterprise Development.[1] We sustain appellants' fourth point of error.

Under the provisions of the DTPA, the Cartwrights are entitled to actual damages, court costs, attorneys' fees, and twice actual damages not exceeding $1,000. TEX.BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp. 1993). The Cartwrights moved for judgment against Enterprise Development "as specified herein and for such other and further relief, both general and special, at law or in equity, to which Defendants are entitled." The Cartwrights specifically requested $107,-351 in actual damages, pre-judgment interest, and $214,702 in punitive damages under the DTPA, but they made no other specific requests. On appeal, the Cartwrights pray for rendition in the amount of $107,351, pre-judgment interest, punitive damages under the DTPA of $214,702, and all court costs. In the alternative, they request that we remand the case for a new trial.

Section 17.50(b)(1) of the DTPA provides as follows:

> (b) In a suit filed under this section, each consumer who prevails may obtain:
>
> (1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000.

TEX.BUS. & COM.CODE ANN. § 17.50(b)(1). The DTPA also mandates that prevailing consumers recover court costs and reasonable attorneys' fees. TEX.BUS. & COM.CODE ANN. § 17.50(d) (Vernon 1987).

■■ The deemed admissions establish the Cartwrights' actual damages at $107,351. The Cartwrights are thus entitled to $107,351 actual damages and exemplary damages of at least $2,000. The admissions do not address attorneys' fees, and the Cartwrights introduced no evidence on that subject. The admissions establish that Enterprise Development's conduct was committed knowingly. However, exemplary damages beyond $2,000 are in the sound discretion of the finder of

---

1. The summary judgment signed by Judge Hunter seventeen days after he recused himself from the case is void. *See Dunn v. County of Dallas,*

794 S.W.2d 560, 563 (Tex.App.—Dallas 1990, no writ).

fact, subject only to a requirement that the trier of fact find knowing conduct and that the damages not exceed three times actual damages. The trial court could have awarded exemplary damages of up to $322,053; it could have awarded the minimum of $2,000; or it could have awarded any amount between $2,000 and $322,053. The Cartwrights' request for judgment of exemplary damages in the amount of $214,702 does not entitle them to rendition of judgment in that amount or any other amount in excess of $2,000. We must remand this issue to the trial court for a determination of the amount of exemplary damages to be awarded the Cartwrights.[2]

 MBank stipulated that it was not a holder in due course. To be a holder in due course, the holder must take the instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. TEX.BUS. & COM. CODE ANN. § 3.302(a) (Vernon 1968). Determining whether a holder is a holder in due course, requires fact findings, and the trial court and this court are bound by the stipulation. *M.J.R.'s Fare of Dallas, Inc. v. Permit and License Appeal Bd. of Dallas,* 823 S.W.2d 327, 330 (Tex.App.—Dallas 1991, writ denied). Since MBank was not a holder in due course, it was subject to any defenses the Cartwrights raised. TEX.BUS. & COM. CODE ANN. § 3.306 (Vernon 1968).

MBank and the Cartwrights tried the case, including the Cartwrights' defenses to the note, and the trial court entered a finding of fact that the Cartwrights failed to prove any defenses. The Cartwrights challenge the findings only on the ground that they conflict with the deemed admissions by Enterprise Development.

 Matters admitted in response to requests for admission are conclusively established only against the party making the admission. TEX.R.CIV.P. 169(2). Deemed admissions neither are admissible against third parties, *USX Corp. v. Salinas,* 818 S.W.2d 473, 479 (Tex.App.—San Antonio 1991, writ denied), nor do they bind co-par-

ties as a matter of law. *Texas Supply Center, Inc. v. Daon Corp.,* 641 S.W.2d 335, 338 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). Furthermore, any declaration by an assignor made after assigning his full interest in the note would not be admissible against the assignee. *See* TEX.R.CIV.EVID. 803(24). While the Cartwrights were entitled to present evidence to establish defenses to the note, they were required to prove their defenses to the note in order to prevent MBank from prevailing on its suit. The Cartwrights do not challenge the sufficiency of the evidence supporting the trial court's finding against them on the defenses to the note. We overrule appellants' fifth, sixth, and seventh points of error.

By their eighth, ninth, and tenth points of error, the Cartwrights complain that the trial court erred by entering judgment based on findings of fact and conclusions of law which were not supported by the pleadings.

 A judgment cannot stand unless it is supported by pleadings and evidence. TEX.R.CIV.P. 301; *Escamilla v. Escamilla,* 805 S.W.2d 886, 887 (Tex.App.—Corpus Christi 1991, no writ). All pleadings shall be construed so as to do substantial justice. TEX.R.CIV.P. 45. The purpose of pleading is to give the adversary parties notice of each party's claims and defenses, as well as notice of the relief sought. *Perez v. Briercroft Serv. Corp.,* 809 S.W.2d 216, 218 (Tex.1991). In determining whether a cause of action was pleaded, the court must find the plaintiff's pleadings adequate to state, with reasonable certainty and without reference to information from another source, the elements of the cause of action and the relief sought with sufficient particularity to allow the court to base a judgment. *Stoner v. Thompson,* 578 S.W.2d 679, 683 (Tex.1979); *Henderson v. Henderson,* 694 S.W.2d 31, 35–36 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). Pleadings will generally be construed as favorably as possible to the pleader. *Gulf, C. & S.F. Ry. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963); *Henderson,* 694 S.W.2d at 36.

 MBank pleaded that it was a holder of the note and entitled to sue on it. MBank also pleaded that the Cartwrights executed

---

2. The admissions on file preclude any contest of liability issues. Therefore, a remand for a determination of damages only is permissible. *See* TEX.R.APP.P. 81(b)(1).

**552**

the note and delivered it to Enterprise Development and that Enterprise Development assigned it to MBank in consideration for value. The Cartwrights did not specially except to the pleading on the grounds that it failed to identify MBank's status with respect to the note.

Construing the pleading with an effect to do "substantial justice" and mindful that the Cartwrights were not prejudiced in their attempt to raise defenses against the note, we hold the pleadings sufficient to allow judgment on the theory that MBank, either as holder or assignee, was entitled to sue to collect on the note, and that the Cartwrights failed to prove any defense to the note. We overrule appellants' eighth, ninth, and tenth points of error.

We AFFIRM that portion of the trial court's judgment which grants judgment in favor of MBank against the Cartwrights. We MODIFY the judgment and RENDER judgment in favor of the Cartwrights and against Enterprise Development in the amount of $107,351.00 in actual damages, together with pre-judgment interest thereon at the rate of ten percent per annum from September 1, 1988, until the date of the trial court's judgment. We REMAND the case to the trial court for a determination of the amount of exemplary damages the Cartwrights shall recover from Enterprise Development.