ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

July 21, 2005

The Honorable Jana Duty
Williamson County Attorney
405 Martin Luther King, Suite 240
Georgetown, Texas 78626

Opinion No. GA-0341

Re: Whether a nonprofit corporation may offer a savings bond or prepaid bank credit card as a prize in a charitable raffle under the Charitable Raffle Enabling Act, Occupations Code chapter 2002 (RQ-0303-GA)

Dear Ms. Duty:

Your predecessor in office asked whether a nonprofit corporation may offer a savings bond or prepaid bank credit card as a prize in a charitable raffle under the Charitable Raffle Enabling Act (the Act), Occupations Code chapter 2002.[1] *See* TEX. OCC. CODE ANN. §§ 2002.001-.058 (Vernon 2004).

We understand that the Johns Community Hospital in Taylor annually conducts a raffle to benefit the hospital. *See* Request Letter, *supra* note 1, at 1. "This year one or more savings bonds and one or more prepaid bank credit cards may be" offered as prizes. *Id.* On behalf of the hospital, your predecessor asked whether the Act forbids these prizes. *See id.* at 1-2.

The Act became effective in 1990 following the voters' approval of Texas Constitution article III, section 47(d). *See* Act of May 29, 1989, 71st Leg., R.S., ch. 957, § 4, 1989 Tex. Gen. Laws 4022, 4025 ("This Act takes effect January 1, 1990, unless the constitutional amendment proposed by the 71st Legislature, Regular Session, 1989, authorizing the legislature to permit and regulate raffles conducted by certain nonprofit organizations, is not approved by the voters . . . ."); *see also* TEX. CONST. art. III, § 47(d). Article III, section 47(a) generally prohibits "lotteries and gift enterprises," which include raffles, except those that the constitution expressly authorizes. TEX. CONST. art. III, § 47(a); *see* Tex. Att'y Gen. Op. No. JC-0111 (1999) at 2 (discussing the Act's genesis). Section 47(d) expressly authorizes the legislature to "permit charitable raffles conducted by a qualified religious society, qualified volunteer fire department, qualified volunteer emergency medical service, or qualified nonprofit organizations under the terms and conditions imposed by

---

[1]*See* Letter and attached Brief from Honorable Eugene D. Taylor, Williamson County Attorney, to Honorable Greg Abbott, Texas Attorney General (Dec. 16, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter and Brief].

general law." TEX. CONST. art. III, § 47(d). The Act "is the general law authorizing and regulating charitable raffles." Tex. Att'y Gen. Op. No. JC-0111 (1999) at 2.

Thus, a qualified nonprofit organization may conduct a raffle subject to conditions set out in the Act. *See* TEX. OCC. CODE ANN. § 2002.051 (Vernon 2004); *see also id.* §§ 2002.003, .052-.057 (defining a qualified nonprofit organization and restricting the conduct of raffles by qualified nonprofit organizations). The Act defines the term "raffle" as "the award of one or more prizes by chance at a single occasion among a single pool or group of persons who have paid or promised a thing of value for a ticket that represents a chance to win a prize." *Id.* § 2002.002(6). Section 2002.056(a) restricts the kind of prizes that may be offered: "A prize offered or awarded at a raffle may not be money." *Id.* § 2002.056(a).

The issue here is whether savings bonds or prepaid bank credit cards are "money" for purposes of section 2002.056(a). Because you do not ask whether the Johns Community Hospital is a qualified organization under the Act, we do not opine on the matter. *See* Request Letter, *supra* note 1, at 1. We assume in this opinion that the prizes are donated or that the value of each prize is less than $50,000. *See id.* § 2002.056(b) (providing that, in general, "the value of a prize offered or awarded at a raffle that is purchased by the organization or for which the organization provides any consideration may not exceed $50,000"); *see also* Tex. Att'y Gen. Op. No. JC-0046 (1999) at 2 (stating that a qualified organization may raffle a prize valued in excess of $50,000 only if the organization neither purchased the prize nor gave consideration for it).

In its 79th regular session, the legislature amended the Act by adding a definition of the term "money" to section 2002.002, Occupations Code. *See* Act of May 27, 2005, 79th Leg., R.S., H.B. 541, § 1 (to be codified at TEX. OCC. CODE ANN. § 2002.002(1-a)). Under the new definition, codified at section 2002.002(1-a), "'[m]oney' means coins, paper currency, or a negotiable instrument that represents and is readily convertible to coins or paper currency." *See id.* This bill became effective June 18, 2005 and applies "to a raffle conducted under Chapter 2002, Occupations Code, . . . if the prizes are awarded on or after the effective date . . . ." *Id.* § 6.

Section 2002.002(1-a) is consistent with the conclusion of Attorney General Opinion JC-0111, a 1999 decision that considered whether a certificate of deposit constitutes money for purposes of section 2002.056(a). *See* Tex. Att'y Gen. Op. No. JC-0111 (1999) at 2. Noting that the Act did not, at that time, define the term "money," the opinion defines the term to include negotiable instruments that function as money-equivalents. *See id.* at 4. Because a certificate of deposit is a negotiable instrument that represents money and is readily convertible to money, the opinion determines that it is a money-equivalent and is prohibited as a prize under the Act. *See* Tex. Att'y Gen. Op. No. JC-0111 (1999) at 4; *see also* Tex. Att'y Gen. Op. No. GA-0097 (2003) at 3 (citing Attorney General Opinion JC-0111 to conclude that an organization that awards a cash refund of all or part of a ticket's purchase price as a raffle prize violates the Act). Section 2002.002(1-a) supersedes the definition of money in Opinion JC-0111.

Applying section 2002.002(1-a) to the issue you present, we note first that neither savings bonds nor prepaid credit cards are coins or paper currency. Thus, if either are within the Act's new

definition of "money," it is because they are negotiable instruments that represent and are readily convertible to cash. We initially consider whether either is a negotiable instrument. The Act does not define the phrase; the only statutory definition is found in Business and Commerce Code section 3.104:

> (a)  Except as provided in Subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
>> (1)  is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>>
>> (2)  is payable on demand or at a definite time; and
>>
>> (3)  does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money. . . .

TEX. BUS. & COMM. CODE ANN. § 3.104(a) (Vernon 2002); *see also id.* §§ 3.106, .108, .109 (describing "unconditional promise or order," "payable on demand or at definite time," and "payable to bearer or to order"); TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 2005) (directing that phrases that have acquired a technical meaning, including by legislative definition, must be construed consistently with that meaning); *State v. Kaiser*, 822 S.W.2d 697, 700 (Tex. App.–Fort Worth 1991, pet. ref'd) (stating that a court will look to a particular profession to ascertain a phrase's technical meaning). "Words making a promise or order payable to bearer or to order are the most distinguishing feature of a negotiable instrument . . . ." U.C.C. § 3-104 cmt. Though it is not apparent from the definition, a negotiable instrument must be capable of being transferred from one holder to another. *See* TEX. BUS. & COMM. CODE ANN. §§ 3.201, .203 (Vernon 2002). Negotiability is a question of law. *See Cartwright v. MBank Corpus Christi*, 865 S.W.2d 546, 549 (Tex. App.–Corpus Christi 1993, writ denied).

Although we find little case law considering the negotiability of either savings bonds or prepaid credit cards, several federal appellate courts have referred to savings bonds as nonnegotiable. *See United States v. Carr*, 706 F.2d 1108, 1112 (11th Cir. 1983) (recognizing that savings bonds are "nonnegotiable instruments"); *United States v. Cyphers*, 604 F.2d 635, 637 (9th Cir. 1979) (noting that savings bonds are nonnegotiable); *Lee v. United States*, 363 F.2d 469, 475 (8th Cir.) ("We are here concerned with non-negotiable United States Series E Savings Bonds, which require the signature of the owner for cashing . . . and which cannot be legally transferred or negotiated in any manner"), *cert. denied*, 385 U.S. 947 (1966). The federal Securities and Exchange Commission and the Internal Revenue Service similarly have stated that savings bonds are not negotiable. *See* SEC. & EXCH. COMM'N, 41 S.E.C. Docket 1114, Release No. 34-36096, 1988 WL 999988, *15 n.51 (1988) (citing a statement of the Department of the Treasury, Bureau of Public Debt, which issues savings bonds, that savings bonds "are not negotiable and cannot be assigned"); INTERNAL REV. SERV., TECHNICAL ADVICE MEMORANDUM 6409309710A, 1964 WL 13948 (1964) (stating that a

growth savings certificate, unlike a series E United States savings bond, "is negotiable").[2] Accordingly, savings bonds are not money for purposes of 2002.056(a) of the Occupations Code. *See* TEX. OCC. CODE ANN. § 2002.056(a) (Vernon 2004). Section 2002.0056(a) of the Occupations Code does not prohibit a corporation from offering or awarding savings bonds as prizes in a charitable raffle held under the Act.

Similarly, a prepaid, or "stored value," credit card is not a negotiable instrument. FEDERAL DEPOSIT INS. CORP., General Counsel's Op. No. 8, Stored Value Cards, 61 Fed. Reg. 40490-01, 40493 & n.13 (Aug. 2, 1996). In an opinion considering "whether and to what extent the funds . . . underlying stored value cards constitute 'deposits'" and therefore qualify for deposit insurance, the Federal Deposit Insurance Corporation examined the nature of stored value cards. *Id.* at 40491. Concluding that stored value cards are not negotiable instruments, the Corporation reasoned, "A stored value card is not in writing, not signed by the maker, and does not contain 'an unconditional promise to pay a sum certain in money and no other promise, order, obligation or power.'" *Id.* at 40493 n.13 (quoting U.C.C. § 3-104(1)); *cf.* TEX. BUS. & COMM. CODE ANN. § 3.104(a) (Vernon 2002). Because a prepaid credit card is not a negotiable instrument, and hence not money for purposes of the Act, section 2002.056(a) does not prohibit a nonprofit corporation from offering or awarding prepaid credit cards as prizes in a charitable raffle held under the Act.

---

[2]*See also* THE INVESTMENT FAQ, SUBJECT: BONDS—U.S. SAVINGS BONDS, http://www.invest-faq.com/articles/bonds-us-savings.html (on file with Opinion Committee) (last revised 11/29/04); *cf.* 31 C.F.R. § 315.15 (stating that, with narrow exceptions, savings bonds are "not transferable and are payable only to the owners named on the bonds").

## S U M M A R Y

Section 2002.002(1-a) of the Occupations Code, adopted by the 79th Texas Legislature, supersedes the definition of "money" articulated in Attorney General Opinion JC-0111. *Compare* Act of May 27, 2005, 79th Leg., R.S., H.B. 541, § 1 (to be codified at TEX. OCC. CODE ANN. § 2002.002(1-a)) *with* Tex. Att'y Gen. Op. No. JC-0111 (1999) at 4. Under the statutory definition, the term "money" means "coins, paper currency, or a negotiable instrument that represents and is readily convertible to coins or paper currency." Act of May 27, 2005, 79th Leg., R.S., H.B. 541, § 1 (to be codified at TEX. OCC. CODE ANN. § 2002.002(1-a)).

United States savings bonds and prepaid, or "stored-value," credit cards are not negotiable instruments. Accordingly, they are not "money" for purposes of section 2002.056(a) of the Occupations Code and may be offered and awarded as prizes in a charitable raffle.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee